IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **STUART MACKEY,**<br><br>          **Plaintiff,**<br><br>vs.<br><br>**UTAH MILITARY ACADEMY,**<br><br>          **Defendant.** | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No. 2:24-CV-197-DAK-JCB<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Jared C. Bennett |

      This matter is before the court on Defendant Utah Military Academy's Motion for Summary Judgment [ECF No. 19]. On February 12, 2026, the court held a hearing on the motions. At the hearing, Plaintiff Stuart Mackey was represented by Spencer D. Phillips, and Defendant Utah Military Academy was represented by Christine D. Hashimoto. The court took the motion under advisement. After considering the parties' memoranda and arguments as well as the law and facts relevant to the pending motion, the court issues the following Memorandum Decision and Order.

## BACKGROUND

      Plaintiff Stuart Mackey began working at Defendant Utah Military Academy ("UMA") in September 2021 as a full-time, long-term substitute at UMA's Lehi, Camp Williams campus. UMA is a free public charter school with a campus in Lehi and a campus in Riverdale. In March 2022, his title changed to military instructor. Mackey's wife, Francine Mackey, was a human resources officer for UMA at the time.

      In 2017, prior to his employment with UMA, Mackey was diagnosed with PTSD by the Veterans' Administration ("VA") during a routine evaluation for obtaining veteran's benefits.

Mackey cannot recall the VA medical staff discussing why he was diagnosed with PTSD, symptoms of the condition, or possibilities for treatment. Mackey never sought treatment for PTSD and never discussed his diagnosis with his regular health care provider. The diagnosis is not included in any health care provider's medical records. Mackey testified that PTSD does not keep him from doing things and his PTSD symptoms never affected his job prior to working at UMA.

It is undisputed that Mackey never told the interim principal of the Lehi campus, Joe Schino, of his PTSD diagnosis. But Mackey states that he disclosed his PTSD diagnosis to former principal Ellinger and several co-workers at UMA—Master Sergeant Michael Graham, his wife, Megan Tidwell, Tracy Bunko, and Michael Bunko. He did not, however, request any accommodations for the condition upon receiving his employment with UMA. But, in 2022, prior to the events at issue in this case, Mackey states that a student's suicide caused him to become anxious, depressed, and unable to effectively manage his classroom.

In the fall of 2022, Mackey violated UMA's policies and code of conduct on multiple occasions. Mackey referred to a student as "that thing" and "little shit" to a counselor and within earshot of other UMA employees. Mackey yelled at supervisors and demanded a meeting to discuss a student's behavior. Mackey interrupted a conversation between coworkers, telling a coworker to "leave, get out," which resulted in the coworker feeling unsafe and threatened. On October 21, 2022, Principal Schino, issued Mackey a formal warning for the above misconduct with the goal of correcting his behavior and as a warning that similar incidents would be grounds for further discipline. Mackey thought the warning was not really to correct his behavior and unfair because other employees allegedly behaved similarly without receiving warnings.

On November 2, 2022, Schino counseled Mackey for inappropriately punishing a student

too harshly. Mackey takes issue with UMA's concern over the language that was used. Mackey complained to Schino that same day that their personalities did not match and it was causing a problem. Schino responded to that complaint in an email that same day and again counseled Mackey for being unprofessional and threatening.

Soon after being admonished, Mackey submitted a letter of resignation, which Mackey's wife asked UMA's Superintendent William Orris not to accept. Rather than resigning, Mackey alleges that he requested that his wife, who was UMA's HR officer, obtain an accommodation for him from Orris, "for the hostile work environment of the school, of Joe Schino." Mackey did not discuss a medical condition during his conversation with his wife, nor did he discuss any symptoms or limitations related to any medical condition, but he claims that t he did not need to discuss his PTSD with his wife because she was well aware of it.

Mackey alleges that his wife then met with Superintendent Orris to discuss Mackey's need for accommodation to help his PTSD symptoms that were being triggered by Schino. Mackey, however, was not privy to the conversation. In response, the next day, Orris met over the phone with Mackey and Mackey's wife. During this phone call in early November 2022, Orris allegedly offered Mackey four options to mitigate Mackey's interpersonal issues with Schino: (1) Mackey would quit; (2) Mackey would take administrative leave until Schino left the school; (3) Mackey would work at the Riverdale campus where he would report to a different principal; and (4) Mackey would remain at the Lehi campus under a different chain of command. The parties agree that Mackey's PTSD, symptoms, or limitations were not mentioned during the phone call with Orris. Mackey states that this is because his wife had already spoken to Orris about it. Orris gave Mackey one week of paid time off to decide which of his four options he would choose, and Mackey chose the fourth option with the expectation that he would not have

3

to be further disciplined by Schino. Following this decision, Mackey worked with Lichelle Watne as a mentor and day-to-day supervisor.

On or around December 6, 2022, a parent sent a complaint to UMA alleging that Mackey abused a child. The parent alleged that Mackey threw a rock at a student, hitting the student, threw a student against the wall, and placed a child in a headlock. After receiving this complaint, Schino met with Mackey to inform him of the complaint and to place Mackey on paid administrative leave while the allegations were investigated. During this meeting, Mackey refused to speak with Schino about the situation and demanded a lawyer several times before walking out of the meeting visibly shaking. Mackey thought that being placed on leave by Schino was contrary to the accommodation Orris had given him.

Immediately after being placed on administrative leave, Mackey went to his wife's office at UMA and yelled at her, which was heard by supervisor Megan Tidwell and possibly other coworkers. Because of Mackey's unprofessional behavior when being placed on administrative leave, Schino terminated Mackey's employment with UMA on December 10, 2022. The termination was with Superintendent Orris' approval.

UMA's policies and code of conduct provide that all employees must conduct themselves in a professional manner and that rude, discourteous, or unbusinesslike behavior, the use of abusive language, creating a disturbance on school premises, or creating discord with clients or fellow employees is inappropriate behavior. UMA's disciplinary procedures state that "if employees fail to respond to or fail to make positive efforts toward improvement, corrective action may ensue, including termination of employment." Also, "[c]orrective action may be in the form of a written or oral reprimand, notice(s) of inadequate job performance, suspension, discharge or any combination of the above." UMA "is not required to take any disciplinary

4

action before making an adverse employment decision, including discharge." All employees at UMA are "at will."

Mackey states that he will never be able to work for another employer again after the way he was treated at UMA. He brought the present lawsuit alleging that disability discrimination and failure to accommodate in violation of the Americans with Disabilities Act ("ADA").

## DISCUSSION

### UMA's Motion for Summary Judgment

UMA moves for summary judgment on both of Mackey's ADA claims, alleging that Mackey has not established that he has a qualifying disability under the ADA. Mackey alleges that UMA discriminated against him on the basis of his PTSD and that UMA failed to accommodate his PTSD as required by the ADA. The ADA states that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . [the] discharge of employees." 42 U.S.C. § 12112. Discrimination under the ADA also includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship." *Id.* Because Mackey relies on indirect evidence that he was discriminated against because of his disability and UMA failed to accommodate his disability, the *McDonnell Douglas* burden-shifting framework governs Mackey's claims. The *McDonnell Douglas* framework involves three elements: (1) the plaintiff must establish a prima facie case of discrimination; (2) if a prima facie case is made, the defendant must offer a legitimate, non-discriminatory reason for the adverse employment action; and (3) if a legitimate, non-discriminatory reason is provided, the plaintiff must show there is a genuine issue of material fact as to whether the employer's

5

proffered reason is pretextual or unworthy of belief. *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1038 (10th Cir. 2011); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973). Mackey argues that there are genuine issues of material fact in dispute on all three stages of this framework and summary judgment is inappropriate.

    A. Prima Facie Case

UMA argues that Mackey cannot establish a prima facie case of discrimination or failure to accommodate under the ADA. To establish a prima facie case of disability discrimination, Mackey must show that "1) he is a disabled person; 2) he is qualified, with or without reasonable accommodation, to perform the essential functions of the job . . .; and 3) he suffered discrimination by an employer . . . because of that disability." *Zwygart v. Bd. of County Comm'rs*, 483 F.3d 1086, 1090 (10th Cir. 2007). A failure to accommodate claim is also evaluated under the *McDonnell Douglas* burden-shifting framework. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1204 (10th Cir. 2018). "Under the first step of the modified framework, a plaintiff must demonstrate that (1) [he] is disabled; (2) [he] is otherwise qualified; and (3) [he] requested a plausibly reasonable accommodation." *Id.*

    1. Disabled Person

Mackey may show that he has a disability recognized by the ADA by showing either that he has an "actual impairment," a "record of such impairment," or was "regarded as having such an impairment." *Neri v. Bd. of educ. For Albuquerque Pub. Sch.*, 860 F. App'x 556, 561 (10th Cir. 2021).

        a. Actual Impairment

Mackey claims that his diagnosis of PTSD by the VA satisfies the first element as a matter of law. But Mackey must still prove with medical evidence that he is impaired as defined

by the ADA. *Brown v. S. Utah Univ.*, No. 2:08-CV-542-TC, 2010 WL 1417861, at *6 (D. Utah Apr. 6, 2010) (plaintiffs "status as a disabled veteran is not sufficient to qualify him as 'disabled' under the ADA"). "To proceed based on an actual impairment, an ADA plaintiff must (1) show he has a recognized impairment; (2) identify one or more appropriate major life activities; and (3) show the impairment substantially limits one or more of those activities." *Neri*, 860 F. App'x at 561-62. Where a plaintiff asserts that PTSD has substantially limited major life activities, medical expert testimony is generally required. *Clancy v. Miller*, 837 F. App'x 630, 635-36 (10th Cir. 2020).

Plaintiff has asserted only his diagnosis of PTSD by the VA and his own limited testimony of sporadic, undefined symptoms. He has not offered expert testimony to link his alleged limitations to his condition. The Tenth Circuit requires more to demonstrate disability than a plaintiff's testimony. In *Neri*, the Tenth Circuit addressed the issue that a plaintiff must provide more than just a diagnosis of PTSD in order to overcome summary judgment. 860 F. Appx. at 562. A plaintiff must also provide medical evidence that the symptoms substantially limit one or more major life activities. *Id.* Mackey concedes that he offers no expert testimony to establish that his PTSD substantially limits any major life activity. In *Clancy*, the plaintiff could not "state how the condition causes limitations on major life activities, for those are clearly matters beyond the realm of common experience and require the special skill and knowledge of an expert witness." *Id.* at 636. Like *Clancy*, Mackey has not met his burden of demonstrating an actual impairment of major life activities.

      b.  Record of Impairment

To demonstrate disability based on a record of impairment, a plaintiff must prove five elements: (1) the plaintiff has a record of . . ., (2) a recognized impairment that (3) the plaintiff

actually suffered and that (4) substantially limited (5) a major life activity. *Zwygart*, 483 F.3d at 1091. The "ADA's statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.* at 1092.

In this case, Mackey alleges that his impairment only limited him from working with a single individual, Principal Joe Schino. Courts have consistently held this type of claim is insufficient to demonstrate that a plaintiff has a disability that substantially limits him. *See Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 (7th Cir. 1996). "The major life activity of working is not 'substantially limited' if a plaintiff merely cannot work under a certain supervisor because of anxiety and stress related to his review of [his or] her job performance." *Id.* In *Steele v. Thiokol Corp.*, the Tenth Circuit recognized that difficulties in interacting with people that the plaintiff worked with more broadly was also not sufficient to demonstrate that the plaintiff was disabled for purposes of the ADA. *Steele v. Thiokol Corp.*, 241 F.3d 1248, 1255 (10th Cir. 2001).

Because Mackey's alleged limitations do not affect a broad class of jobs and are instead tied solely to his relationship with one individual, he cannot establish a record of impairment under the ADA. Courts have made clear that personality conflicts with a single supervisor, even if distressing, do not rise to the level of a protected disability.

    c. Regarded as Impaired

To demonstrate disability under the "regarded as impaired" approach, "the plaintiff must show that (1) he has an actual or perceived impairment, (2) that impairment is neither transitory nor minor, and (3) the employer was aware of and therefore perceived the impairment at the time of the alleged discriminatory action." *Adair v. City of Muskogee*, 823 F.3d 1297, 1306 (10th Cir.

2016). An "individual is 'regarded as having such an impairment' if the individual is subjected to a prohibited action because of an actual or perceived physical or mental impairment, whether or not that impairment substantially limits, or is perceived to substantially limit, a major life activity." 29 C.F.R. § 1630.2(I)(1) (2025).

Here, Mackey cannot show that he was regarded as impaired under the third element because Schino, the decision maker with respect to his discipline and termination, did not perceive Mackey to be impaired. There is no evidence that Schino knew of Mackey's PTSD diagnosis. Mackey states that his wife told Orris about his PTSD, but Mackey is relying on her testimony from another case in which she testified that she told Orris that several issues at the school—a student's suicide, a student harming adults, and their daughter being sexually harassed—had caused his PTSD to be "completely off the charts." This type of conversation does not establish that Orris was aware of an ADA qualifying disability. Mackey testified that he did not know what he wife told Orris, and the factual context before the court does not show that she discussed Mackey's symptoms or limitations. The discussion with Orris appeared limited to separating Orris from Schino, not addressing the symptoms and limitations of a qualifying disability.

Moreover, the testimony Mackey relies on from his wife indicates that Mackey was having problems with his PTSD because of specific, troubling events that had happened close in same time. That testimony suggests that the problem was transitory in nature. All of Orris' options for going forward involved only Mackey's separation from Schino. They did not involve accommodations for an ongoing disability. A transitory impairment does not qualify under the "regarded as impaired" element. *Adair*, 823 F.3d at 1306.

Mackey must also demonstrate that his impairment was not minor. However, the only

evidence of this is Mackey's testimony that certain events escalated his PTSD. It is not within a layperson's understanding to distinguish between a natural reaction to a traumatic event and PTSD. But he testified that he never sought treatment for his PTSD or recalled what the VA discussed with him when he was diagnosed with PTSD. The record does not demonstrate that Mackey has a clear, medically based understanding of his condition. Mackey's claims that his reactions to certain events were his PTSD, but that is not supported by any medical evidence.

The Third Circuit has held that "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that perception caused the adverse employment action." *Gavurnik v. Home Props., LP*, 227 F. Supp. 3d 410, 419 (E.D. Pa.) (quoting *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996)). Thus, being "regarded as" disabled requires more than telling people that you have PTSD. Even if Orris knew of Mackey's condition, Mackey testified that he never discussed his condition with Schino or Orris. Mackey states that his conversation with Orris related to being separated from Schino, it did not involve a discussion of PTSD. Although Mackey claims that his wife mentioned his PTSD to Orris, it appears to have been vaguely referenced and characterized as a transitory situation, not an ongoing disability that would require any ongoing accommodations. Schino undisputedly did not know of Mackey's PTSD when he decided to terminate him for unprofessional conduct, and there is no evidence that Orris' approval of Schino's decision to terminate Mackey was related to Mackey's PTSD. There is evidence in the record that Orris had turned over the issue to Schino. The court, therefore, concludes that Mackey has not demonstrated that he was regarded as impaired.

Because Mackey cannot show an actual impairment, a record of impairment, or that he was regarded as impaired by the decisionmaker, Mackey fails to establish the first element of a

prima facie case and UMA is entitled to summary judgment on his ADA claims.

    2. Otherwise Qualified to Perform Essential Functions

UMA further argues that Mackey cannot establish the second element of a prima facie case, which is that he is qualified to perform the essential functions of his job without reasonable accommodation. A two-part analysis is required to determine whether a plaintiff is qualified: (1) "whether the plaintiff can perform the essential functions of the job;" and (2) "whether any reasonable accommodation by the employer would enable him to perform those functions." *Adair*, 823 F.3d at 1307.

Mackey had several incidents where he acted unprofessionally with other staff members and students. Mackey improperly disciplined a student, received a parent complaint about abusing a child, and when confronted with an administrative leave to investigate the situation, he yelled at his wife, who was UMA's HR officer. The evidence of Mackey's behavior shows an inability to properly manage students and act professionally in the workplace. He states that a student who committed suicide and the way Principle Schino treated him exacerbated his PTSD. But he admits that he never sought treatment for his PTSD. And, although he never sought treatment for the condition, UMA should have excused his behavior because he thinks his reactions and conduct are related to PTSD. Mackey has not demonstrated that he was qualified to perform the essential function so the job.

Even if Mackey could have been considered qualified to perform the essential functions of the job with an accommodation, the only accommodation Mackey ever sought was being separated from Principal Schino as his supervisor. Mackey claims that several difficult situations going on at the school triggered his PTSD and his discipline from Schino also triggered his PTSD. But he does not claim that the unprofessional conduct he received warnings for were as a

11

result of working with Schino. Rather the discipline he received for that conduct triggered him because he received the discipline from Schino. Mackey never sought an accommodation that would address his ongoing problems with his behavior toward students and coworkers. He only sought to be removed from working with the supervisor disciplining him for his conduct. Because such an accommodation would not have effectively addressed Mackey's unprofessional behavior and poor classroom management, he has not demonstrated that he could perform the essential functions of his position with a reasonable accommodation.

    3.   Discrimination Because of Disability

In addition, UMA argues that Mackey cannot establish that he suffered discrimination because of his alleged disability. "In order to demonstrate discrimination, a plaintiff generally must show that he has suffered an adverse employment action because of his disability." *C.R. England*, 644 F.3d at 1038. On this third element, Mackey "must present some affirmative evidence that disability was a determining factor in the employer's decision." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 2001). "[W]hen an employer indisputably had no knowledge of the disability, it cannot be liable under the ADA." *Ewing v. Doubletree DTWC, LLC,* 673 F. App'x 808, 810 (10th Cir. 2016). The only adverse action Mackey alleges is his termination, but he has not met his burden of showing that his PTSD was a determining factor in the decision to terminate him.

The only support Mackey presents is his allegation that Superintendent Orris knew of his PTSD. But mere awareness is not enough without more. *Ainsworth v. Indep. Sch. Dist. No. 3 of Tulsa Cnty., Okla.*, 232 Fed. App'x 765, 771 (10th Cir. 2007). There is no evidence in this case of remarks or actions that could be viewed as reflecting a discriminatory animus. Any incident in which Mackey was disciplined could have been the basis for a termination, but he was given

several opportunities to correct his performance. When Mackey struggled with receiving discipline, Orris gave him a week of paid leave. And, significantly, the ultimate decisionmaker in this case was Principal Schino, who undisputedly did not know about Mackey's PTSD.

4. Failure to Accommodate

In relation to Mackey's ADA failure to accommodate claim, Mackey has similarly not shown that he is disabled or that he is otherwise qualified as discussed above. In addition, on this claim, Mackey cannot demonstrate the failure to accommodate requirements because he failed to request an accommodation for a disability. The accommodation process is intended to be interactive between the employee and the employer and "must ordinarily begin with the employee providing notice to the employer of the employee's disability and any resulting limitations." *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1171 (10th Cir. 1999). "To succeed on [his] claim, [Mackey] must have requested accommodation based on [his] disability." *Edmonds-Radford v. Southwest Airlines Co.*, 17 F.4th 975, 992 (10th Cir. 2021).

In this case, Mackey failed to inform his employer of any disabilities or limitations and failed to request an accommodation based on his disability. Mackey did not disclose the disability when he applied or obtained the position. When he began being disciplined by Principal Schino, Mackey claims that his PTSD worsened. But he did not mention his PTSD to Schino, and he did not formally disclose it the HR. Mackey's wife allegedly knew and told Superintendent Orris about it. But the evidence of her conversation with Orris is vague in relation to Mackey's symptoms and limitations. It is undisputed that Mackey never spoke to Orris about his PTSD. He only talked to Orris about being separated from his supervisor, Schino. At no point during his employment at UMA did Mackey ever disclose limitations resulting from his PTSD. These are required steps in the interactive accommodations process. It is "the

responsibility of the individual with a disability to inform the employer that an accommodation is needed." 29 C.F.R. § 1630.9 (2025).

Even if Mackey could be considered to have started the interactive accommodations process by having his wife speak to Orris, Mackey requested an accommodation because of how he was being treated by a specific supervisor, not because of a disability. This goes back to the first element where he has not demonstrated a disability because seeking relief from a supervisor does not demonstrate a qualifying disability.

The court concludes that Mackey has failed to establish a prima facie case of either ADA discrimination or failure to accommodate. Because the court finds that Mackey has not demonstrated a prima facie case, there is no need to address the remaining elements in the *McDonnell Douglas* framework. The court, however, notes that the parties agree that UMA presented a legitimate, non-discriminatory reason for Mackey's termination and, given Schino's lack of knowledge as to Mackey's PTSD, the court finds no evidence that UMA's reason for his termination is pretextual. Accordingly, the court grants UMA's Motion for Summary Judgment.

## CONCLUSION

Based on the above reasoning, Defendant Utah Military Academy's Motion for Summary Judgment [ECF No. 19] is GRANTED.

DATED this 23rd day of February 2026.

BY THE COURT:

_____
DALE A. KIMBALL
UNITED STATES DISTRICT JUDGE